JONATHAN HARTMAN v. CHICAGO, BURLING-
TON & QUINCY RAILROAD COMPANY, Ap-
pellant.

**Division Two, July 14, 1914.**

1. **NEGLIGENCE: Imputed or Inferential: Facts and Circum-
stances.** Where all the facts connected with an accident fail
to point to the negligence of the defendant as the proximate
cause of the accident, but show a state of affairs where an
inference could be as reasonably drawn that the accident was
due to a cause or causes other than the negligent act of the
defendant, then the plaintiff cannot rely upon mere proof of
the surrounding facts and circumstances of the accident, and
the defendant is not called upon to explain the cause of the
accident and to purge himself of the imputed or inferential
negligence.

2. ———: ———: ———: **Leaning from Engine: Bent Handhold:
Contributory Negligence.** The plaintiff, a fireman in defend
ant's employ, advanced to the opening between the cab and
the tender while the engine was running and, reaching, but
not looking, for the handholds on cab and tender, leaned out.
He missed a handhold, fell and was injured. The handhold
on the tender, five feet long, was bent in near the middle in
such manner that, instead of being three inches throughout
from the tender wall, it varied from an inch and a half to
three inches. *Held*, that plaintiff's own evidence shows that he
was guilty of contributory negligence, and a peremptory in-
struction to find for defendant should have been given.

Appeal from Livingston Circuit Court.—*Hon. Arch.
Davis*, Judge.

REVERSED.

*O. M. Spencer, Frank Sheetz, John C. Carr* and
*M. G. Roberts* for appellant.

(1) Defendant's instruction in the nature of a
demurrer to the evidence should have been given for
the reason that the plaintiff's admitted neglect to use
the handhold, free from all defects, on the cab side,

contributed as a proximate cause to his fall and sub-
sequent injury. 20 Am. & Eng. Ency. Law (2 Ed.),
p. 140; 26 Cyc. 1247; McGinty v. Waterman, 93 Minn.
242, 3 Am. & Eng. Ann. Cases, 41; Walter v. Wire Co.,
14 Mo. App. 592; Gribben v. Mining Co., 142 Cal.
248; Munn v. Wolff Mfg. Co., 94 Ill. App. 122; Cogan
v. Burnham, 175 Mass. 391; Hart v. Light Co., 201 Pa.
234; Piper v. Iron Co., 78 Md. 249; McGoldrick v. Met-
calf, 144 N. Y. 630. (2) Courts are not required to
stultify themselves by giving credence to testimony
palpably untrue and contrary to physical facts and
common sense. Nugent v. Milling Co., 131 Mo. 252·
Spiro v. Transit Co., 102 Mo. App. 263; DeMaet v.
Storage & Packing Co., 121 Mo. App. 104; Hook v.
Railroad, 162 Mo. 581; Payne v. Railroad, 136 Mo.
580; Phippin v. Railroad, 196 Mo. 321; Kelsay v. Rail-
road, 129 Mo. 375; Fellenz v. Railroad, 106 Mo. App.
161; Barrie v. Railroad, 102 Mo. App. 91; Ferguson &
Wheeler v. Trans. Co., 79 Mo. App. 361; Elliott on
Railroads (2 Ed.), sec. 1703; 1 Moore on Facts, sec.
148, p. 193; Hayden v. Railroad, 124 Mo. 566; Hug-
gart v. Railroad, 134 Mo. 680. (3) The demurrer to
the evidence should have been sustained because: The
plaintiff in choosing knowingly and unnecessarily to·
look ahead by swinging his body out from the rapidly
moving engine (a dangerous and unsafe position) in-
stead of occupying the seat within the cab to look out
of the window (a safe place) but for which he would
not have fallen from the engine, was guilty of negli-
gence as a matter of law barring recovery. This legal
conclusion of negligence *per se* could not be excused,
palliated or justified by proof that other firemen, even
to defendant's knowledge, had been habitually guilty
of similar negligent acts, that is, that they, too, left
the safe place provided for them and knowingly chose
a more dangerous way to look ahead. Such similar
negligent custom practiced by others, even to defend-
ant's knowledge, could not impart the qualities of due

care to an act of plaintiff, which the law declares negligence barring a recovery. The fact that other firemen, to defendant's knowledge, refused to use the places provided for them, and knowingly chose to experiment with death and danger by taking more dangerous positions to look ahead, does not change the rules of law concerning negligence precluding a recovery for so doing. Proof of similar negligent acts habitually by other firemen did not excuse the plaintiff for such evidence of custom is never admissible if the plaintiff's act is itself negligent. Chaney v. Railroad, 176 Mo. 603; Lenk v. Coal Co., 80 Mo. App. 380; Smith v. Box Co., 193 Mo. 737; Moore v. Railroad, 146 Mo. 582; Montgomery v. Railroad, 109 Mo. App. 94; Hirsch v. Bread Co., 150 Mo. App. 174; Watson v. Coal Co., 52 Mo. App. 366; Railroad v. Coal Co., 52 Mo. App. 366; Railroad v. Kane, 118 Fed. (C. C. A.) 223; Martenson v. Railroad, 60 Iowa, 705; Railroad v. Schumacher, 152 U. S. 78; Railroad v. Jones, 95 U. S. 439; Railroad v. Tindall, 57 Kas. 719; Powers v. Railroad, 56 N. E. 710.

*Burns, Burns & Burns* for respondent.

In the case at bar plaintiff was doing precisely what he had done for nine and a half years and what the other servants of defendant had been habitually doing for twenty-two years at least, and without any accident as far the evidence shows. If the course adopted was not reasonably safe defendant could and would have shown that fact but it offered no evidence on that point. If the custom prevailed for a long time for firemen to use the handholds on the tender and cab to look ahead to view the track or to get air and so long that the defendant with reasonable care would have known it then the defendant is held as a matter of law to know that the plaintiff would do just as he

did in this case.   Crawford v. Stock Yards Co., 215
Mo. 394; Finnegan v. Railroad, 244 Mo. 608.   In the
case at bar the act of going to the opening of the gang-
way between the cab and tender was not negligence
*per se.*   The custom was observed for at least twen-
ty-two years, without accident or injury resulting,
down to the time this defective handhold was provided
by the defendant.   The evidence on that point is un-
disputed and after a searching cross-examination by
defendant's counsel not a syllable was elicited tending
to show that what plaintiff did was not reasonably safe
if the engine had not been defective.   The contention
that the court should have sustained a demurrer at
the close of plaintiff's case is without merit.   Riley v.
O'Kelley, 250 Mo. 647; McGee v. Railroad, 214 Mo.
530; Riggs v. Railroad, 216 Mo. 304; Merritt v. Match-
ett, 135 Mo. App. 176; Barr v. Martin, 170 Mo. App.
399.

ROY, C.—Suit for damages for personal injuries
in which plaintiff had a verdict and judgment for
$18,000, from which defendant appeals.

Plaintiff had been in the service of the defendant
as fireman nearly ten years, sometimes acting as en-
gineer.   On the morning of April 18, 1910, he was fire-
man on train No. 55, known as the "Chicago and Mis-
souri Limited."   At Cameron there was a change of
engines caused by the fact that the one previously
used was disabled.   The substituted engine was No.
2164.   The gangway on that engine is eighteen or
twenty inches wide.   There is a handhold, a perpen-
dicular iron rod, on each side of the entrance to the
gangway from the outside, on both sides of the en-
gine.   The handhold on the corner of the tank is about
five feet long, and extends from about a foot below
the floor of the gangway to four feet above it.   These
handholds were fixed to the tank with bolts, so that,
in their ordinary position, they were about three inches

from the walls of the tank and cab. The one on the left side of the tank was bent so that at a point sixteen inches from the top it was an inch and a half from the tank, and sloped from that point above and below, and being three inches from the tank at a point two inches below the top. The handhold on the left side of the cab was in its ordinary condition. The fireman's seat was on the left side of the cab, which had the usual windows.

The evidence for the plaintiff, introduced over the objections of defendant, showed that it had been the custom, for many years, of firemen in defendant's employ to step to the opening in the gangway to look ahead and to get air, supporting themselves by taking hold of the handholds. The injury occurred about a half mile west of Lathrop while the train was going about thirty-five miles an hour.

On direct examination the plaintiff gave his knowledge of the accident as follows:

"By Mr. Burns: When you step to the gangway to look ahead or to get air or for any purpose, in looking out, how do you support yourself? A. By taking hold of these two handholds. . . .

"Q. How far from Lathrop was it you stepped to the gangway? A. I think it was about a half a mile west of Lathrop.

"Q. When you stepped to the gangway, for what purpose did you step there? A. Well, it starts to make a curve there, and they have to look ahead.

"Q. What did you do when you stepped to the gangway? A. I reached for those handholds.

"Q. Did you get hold of them? A. No, sir.

"Q. Do you know anything about any subsequent happenings? When do you remember anything afterward? A. I don't remember anything then. I remember reaching for the handhold and missing it, and don't remember anything further."

On cross-examination he testified as follows:

"Q. Was there a handhold on the back of the cab, extending out into the gangway on the fireman's side on engine 2164 that morning? A. I never looked; I don't know whether there was or not.

"Q. You mean to tell the jury that you don't know whether that handhold was there or not? A. No, sir.

"Q. You don't know whether there was a handhold over there (indicating) or not? A. No, sir.

"Q. On direct examination you mentioned the fact that as you went to the gangway you reached for the handholds? What were you talking about? A. That handhold that shows there, and the one that should have been on the tank.

"Q. Did you see either of them? A. No, sir.

"Q. How did you know where they were, if you didn't see them. A. Because its customary for them to be right there.

"Q. Your eyesight was good that morning? A. Yes, sir.

"Q. You mean to tell the jury you didn't see the handhold on either the front of the tender or back of the cab that morning? A. Yes, sir.

"Q. How could you reach for them, if you didn't know either of them was there? A. Because they ought to have been there.

"Q. If this had been there on the back of the cab, you would have got it, wouldn't you? A. I think I would.

"Q. If it was there? A. I think I would.

"Q. Did you reach for this one (indicating)? A. Yes, sir.

"Q. In going out to the edge of the gangway, I will call your attention to this open space in here. In going out to look out of the gangway, what has been your custom with reference to getting hold of this handhold here? A. I take hold of both of them. I

come up quickly and catch them handholds and stop here.

"Q. You wouldn't depend on this handhold here? A. Yes, sir; I would; I would take both.

"Q. Would you think it safe to depend on this alone? A. No, sir; not when the train is running.

"Q. You must get hold with the right hand, then? A. It is a good idea to get hold with both.

"Q. If the train is going fast and you get hold of this handhold on the tank with the left hand, would it have a tendency to throw you out? A. It would have a tendency to throw a man out whichever one he got hold of, if he didn't get but the one.

"Q. Regardless of the way the train was going? A. Yes, sir."

Plaintiff did not know the bent condition of the handhold. He was severely cut and bruised about the face, several teeth were knocked out, and he suffered a slight curvature of the spine. There were several broken ribs. An abscess formed and broke several times in his bowels. His injuries are permanent.

At the close of all the evidence the defendant asked an instruction in the nature of a demurrer to the evidence, which was refused.

The peremptory instruction to find for the defendant should have been given. In our opinion the plaintiff, as shown by his own evidence, was guilty of contributory negligence and cannot recover. Many cases have been cited by counsel on both sides. None of them approximate this case. This is not a case in which the handhold gave way by reason of a defect, and thus let the plaintiff fall. There were the usual handholds strong enough for their intended purpose. One of them was bent out of its usual line an inch and a half at the point of the greatest departure. There is no proof in the case that it was the custom of the firemen to lean out of the gangway without first mak-

*[margin note:]* Negligence: Contributory: Facts and Circumstances.

ing sure of their grasp on the handholds. There is no showing that the plaintiff ever did such a thing but the one unfortunate time. There is no evidence to the effect that firemen become so skilled in leaning from the gangway that they are able, while in the act of placing their bodies beyond the point of equilibrium, to safely catch the handholds without looking or feeling for them. We do not believe that such a thing could be safely done, nor that a man of ordinary prudence would attempt it. Shall we assume without proof that the plaintiff was able to do that?—and shall we further draw the unreasonable conclusion that he missed both handholds because one of them was bent towards the tank as stated?

In McGrath v. Transit Co., 197 Mo. l. c. 104, GRAVES, J., said: "Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the accident, but show a state of affairs where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances of the accident, and the defendant is not called upon to explain the cause of the accident, and to purge himself of the imputed or inferential negligence."

The judgment is reversed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of ROY, C., is adopted as the opinion of the court. All the judges concur.