JOHNATHAN HARTMAN, Respondent, v. CHI-CAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

**Kansas City Court of Appeals, December 6, 1915.**

1. **CONTRACTS: Railroads: Relief Benefit.** A railroad company cannot make a valid contract with its employee against its own negligence, and that in whatsoever guise it may appear, or howsoever cunningly designed or phrased, such contract will be denounced and rejected by the courts as opposed to the dictates of common morality and humanity.

2. ————: ————: ————. A relief benefit contract accepted by railroad employees, wherein the contract seeks to provide in advance for the release of the defendant from the legal consequences of its future wrongs is nonenforceable, regardless of whether or not it has the support of a consideration moving from the railroad company to the employees.

3. ————: ————: ————. When an employee of a railroad contributes his dues to the *Benefit fund*, established by a road, the law looks with extreme disfavor upon forfeitures designed to destroy his rights bought and paid for, and will not enforce them unless compelled by the plain letter of the contract.

Appeal from Linn Circuit Court.—*Hon. Fred Lamb,* Judge.

AFFIRMED.

*Burns, Burns & Burns* for respondent.

*Bailey & Hart, J. C. Carr* and *M. G. Roberts* for appellant.

JOHNSON, J.—On April 18, 1910, plaintiff, who had been employed by defendant as a locomotive fireman and engineer for ten years or more, accidentally fell from an engine on which he was serving as fireman, and which was drawing a train employed in interstate commerce, and sustained personal injuries, the nature and extent of which are a subject of serious dispute between the parties. Plaintiff contends that the injuries totally and permanently disabled him, while defendant insists that they were slight and temporary. The court sitting as a jury resolved this issue in favor of plaintiff and for the purposes of the present inquiry we shall accept that solution as a finality. From September, 1900, to the date of his injury, plaintiff was a member in good standing of the Relief Department of defendant and this suit, which was filed August 22, 1914, is for the recovery from defendant of $2433.35 as disability benefits plaintiff alleges are due him from that department under the terms and conditions of his contract for such benefits.

The answer alleges a forfeiture, resulting from the facts that plaintiff failed to comply with certain provisions of his contract relating to the presentation and prosecution of such claims and elected, under a choice of remedies offered by the relief contract, to prosecute an action in tort against defendant for damages resulting from his injury, thereby surrendering his claim for indemnity. The reply denied this new matter and interposed affirmative defenses thereto, the nature of which will appear in our review of the case. It suffices to say that the questions of law we shall discuss and determine are properly raised by the pleadings. The trial court decided these questions for

plaintiff, rendered judgment accordingly and defendant appealed.

The case was tried on an agreed statement of facts which left open and unsettled the single issue of "the extent of plaintiff's injuries and the duration of disability arising therefrom." The agreed statement is as follows: "Hartman was injured on the 18th day of April, 1910, by falling from a locomotive on which he was engaged as a fireman and while said Hartman was employed by the defendant in interstate commerce; that prior to his said injuries, the defendant Hartman became a member of the Relief Department of the defendant by the execution and delivery of applications for membership, true copies of which are attached to defendant's answer as Exhibits "A" and "B"; that Exhibit "C", attached to the defendant's answer is a correct copy of the regulations of said Relief Department effective at the time of plaintiff's said injury, and the said exhibits are considered in evidence and constitute the contract which exists between plaintiff and the defendant in relation to his membership in said Relief Department; that said Relief Department was operated in accordance with said regulations and that plaintiff and defendant had contributed to the expense of operating said Relief Department as required by said contract, and that the plaintiff was at the time of his injury a member thereof in good standing; that when plaintiff was injured he was taken to the hospital by the defendant and there treated by its surgeons for a period of about three weeks; that such benefits as defendant admits plaintiff might have elected to receive from said Relief Fund on account of said injury were duly tendered to him by the defendant and refused, and plaintiff elected to prosecute an action at law against the defendant for damages on account of said injuries, and for that purpose did on July 13, 1910, file a suit against

192MA18

the defendant in the circuit court of Livingston county, Missouri, to recover fifty thousand dollars for said injuries, which suit the plaintiff prosecuted to a final judgment in the Supreme Court of Missouri; that the opinion handed down by the Supreme Court of Missouri, July 14, 1914, in said case may be offered in evidence by the plaintiff herein subject to the objections of the defendant herein; that in said suit for damages the plaintiff alleged he was permanently disabled and the defendant denied such injury and disability at all times; that plaintiff never made any demand upon defendant or its Relief Department for benefits on account of said disability until and by means of the filing of this suit and did not report to the medical examiner of the defendant's Relief Department at any time after he left the care of the defendant's surgeons about three or four weeks after his injury.''

The action for damages prosecuted by plaintiff for his injury was based on negligence of defendant and was successfully maintained in the trial court where he recovered a judgment for $18,000, but on appeal to the Supreme Court that judgment was reversed outright on the ground that the proof did not disclose a causal relation between the alleged negligence and the injury. [Hartman v. Railroad, 261 Mo. 279.] The agreed statement, while conceding that plaintiff was employed in interstate commerce at the time of his injury, does not disclose that his action for damages asserted a cause falling under the operation of the Employers' Liability Act, nor does the reported opinion filed in the Supreme Court contain a direct statement of that fact, but from the facts of the case, as stated therein, the inference we think should be drawn that the pleaded cause was under that act. The pleader was not required to refer to the Federal Act and the allegation and proof of facts, which showed that the injuries were received while plaintiff was

employed by the defendant railroad company in interstate commerce, would be sufficient to bring the action within the purview of the act since State as well as Federal courts are "presumed to be cognizant of the enactment of the Employers' Liability Act and to know that with respect to the responsibility of interstate carriers by railroads to their employees injured in such commerce after its enactment, it had the effect of superseding State laws upon the subject." [Railway Co. v. Wulf, 226 U. S. 570; Second Employers' Liability Cases, 223 U. S. 1; Moliter v. Railroad, 180 Mo. App. 84.]

Membership in the Relief Department was restricted to employees of defendant and provision was made in the regulations of that department for the creation and maintenance of a "relief fund" for the payment of sick, disability and death benefits, such fund to consist of "voluntary contributions from members thereof, income derived from investments and from interest paid by the company and money advanced by the company when necessary to pay benefits as they become due." Defendant had general charge of the department, guaranteed the fulfillment of its obligations "as determined by these regulations" and took charge of all moneys and securities belonging to the Relief Fund. The direct management of the department devolved upon "an advisory committee" composed of appointees of defendant and of others elected by the membership of the former class being in the majority. Defendant had complete control over the department and over the advisory committee. Employees were encouraged but not compelled to become members, and when they did, were required to make written application and pay dues as in fraternal associations. The right of a member injured in the service of defendant to receive disability benefits or of his beneficiary to receive death benefits did not depend upon the question of whether the

injury was due to negligence or mere accident. In either case the right to benefits followed the injury, provided the member complied with certain rules and regulations put into operation by the fact of his injury. By the terms of rule 55, he was required to give immediate notice to his timekeeper and to report to the medical examiner under penalty of a forfeiture of his right if he avoided the medical examiner or neglected to report or keep appointments "as herein provided."

Rule 62 provided that "any claim for disability benefits, to be valid, must be made within sixty days from the time when such benefits accrued." And Rule 64 contained provisions which are the main reliance of defendant and are as follows:

"In case of injury to a member, he may elect to accept the benefits in pursuance of these regulations, or to prosecute such claims as he may have at law against the Company or any Company associated therewith in the administration of their Relief Departments.

"The acceptance by the members of benefits for injury shall operate as a release and satisfaction of all claims against the Company and all other Companies associated therewith as aforesaid, for damages arising from or growing out of such injury. . . . and further, if any suit shall be brought against the Company or any other Company associated therewith as aforesaid, for damages arising from or growing out of injury or death occurring to a member, the benefits otherwise payable and all obligations of the Relief Department and of the Company created by the membership of such member in the Relief Fund shall thereupon be forfeited without any declaration or other act by the Relief Department or the Company; but the Superintendent may, in his discretion, waive such forfeiture upon condition that all pending suits shall first be dismissed.

"The payment by the Company, or any Company associated therewith as aforesaid, of any amount in compromise of a claim for damages arising from or growing out of an injury to, or the death of, a member, shall preclude any and all claims for benefits from the relief fund arising from or growing out of such injury or death."

During his membership in the relief department, plaintiff contributed $235.50 as dues and on the hypothesis that total and permanent disability resulted from his injury he would be entitled to recover the full amount of his demand unless he forfeited his right to disability benefits by failing to comply with rules 55 and 62, or by his election under rule 64, to resort to an action in tort against defendant.

Should the fact that plaintiff began and prosecuted to a final and unfavorable decision in the Supreme Court an action for damages against defendant, founded on the Employers' Liability Act, preclude him from asserting a right to disability benefits under his contract with the Relief Department of his employer? His right to such indemnity depends solely upon that contract which, in clear and explicit language, declares that it shall cease if the member does the precise thing that plaintiff did, i. e., prosecute against defendant an action for damages arising from his injury. The rules are fundamental that a party will not be allowed to accept the benefits and reject the burdens of his contract—to play fast and loose—and that courts are not, and should not be, invested with the paternal function of making contracts for people in opposition to, or in derogation of, those they have chosen to make for themselves. But the provisions we are asked to interpret and enforce do not relate to the creation of a contractual right of plaintiff, but to its enforcement, and merely pertain to the forfeiture of a right which, under the contract, sprang complete from the accidental injury and con-

sequent disability. Courts look with extreme disfavor upon forfeitures designed to destroy valuable rights bought and paid for, as in the present case, and will not enforce them unless compelled by the plain letter of the contract. [Brittenham v. W. O. W., 180 Mo. App. 523; Mathews v. Modern Woodmen, 236 Mo. 326; McMahon v. Maccabees, 151 Mo. 522.]

There are two principal grounds upon which plaintiff argues that the forfeiture under rule 64 should not be enforced, i. e., that it is wholly without consideration from defendant and that it is immoral and opposed to a sound public policy, for the reason that it is nothing more nor less than an attempt by defendant to enforce an agreement to release it in advance from the consequences of its own future negligence.

If the nature of the obligations and duties defendant had assumed towards the Relief Department and its members were to be ascertained by an analysis of the printed regulations which constituted the contract, we would be inclined to hold that defendant was not required to contribute anything to the benefit or expense funds of that department, the extent of its pecuniary duty being to make "advances" which means loans, in case the funds accumulated from the dues of the members at any time should be insufficient to discharge obligations that were due and payable. The plan of the department seems to contemplate that it must be self-sustaining, i. e., supported entirely by the contributions of beneficiary members and that defendant should be required to sustain no other relationship towards it than that of manager and banker. But in the agreed statement the parties placed a different construction on the contract and stipulated that defendant, under its terms, "had contributed to the expense of operating said Relief Department."

We are bound to accept the facts agreed upon as the true facts of the case and must proceed with our

consideration of the questions in hand from the hypothesis that the Relief Department was a voluntary association composed of defendant and its employees who chose to become members; that it was organized and conducted, not for profit, but for the main purpose of providing and administering funds for the payment of disability and death benefits; that necessary funds for benefits and expenses were derived mainly from dues paid by the beneficiary members but in part by contributions from defendant, and that defendant, through its officers and agents, with the aid of an advisory committee, administered the department for the benefit of its members.

But the contract plan did not require defendant to assume and discharge these duties and burdens without any pecuniary consideration. It provided a substantial and, indeed, profitable *quid pro quo* in the form of provisions the inevitable (and, of course, contemplated) result of which was to discourage injured employees who were members of the Relief Department from instituting and prosecuting damage suits against defendant. Under these provisions if an injured member accepted any relief benefits *ipso facto* he released defendant from liability for damages, in cases where the injury was caused by negligence of defendant and on the other hand, if he brought suit against defendant for damages, *ipso facto* he forfeited his right to benefits which he had paid for in contributions deducted from his pay checks.

If the facts and circumstances of his injury were such as to justify a reasonable inference that it was caused by negligence of defendant he was compelled to choose between two hard alternatives—was given a sort of "Hobson's choice" which, when exercised, necessarily would result in his deprivation of a substantial right, on the one hand the right to prosecute an apparently meritorious action in court for the redress

of a wrong, and on the other, the right to an indemnity he had paid for.

But it cannot be said that his agreement to make such election and to abide by its consequences was unsupported by a consideration. The promise of defendant to administer and give financial backing and stability to the voluntary association and to contribute to its expense fund was a consideration for the promise of the members when injured and entitled to benefits to accept them on the conditions imposed, which were for the benefit of defendant, and the real question for our solution is not that of a sufficient consideration for the forfeiture, but that of whether or not the promise of the member to elect was void for the reason that, in substance, it amounted to an agreement to release defendant from liability for the consequences of its own positive wrong, i. e., negligence and, therefore, nonenforceable as being opposed to a sound public policy.

The rule is well settled that an employer cannot make a valid contract with his employee against his own negligence and that in whatsoever guise it may appear, or howsoever cunningly designed or phrased, such contract will be denounced and rejected by the courts as opposed to the dictates of common morality and humanity.

Contracts of similar import to the one before us have been before the courts of other jurisdictions and we shall refer to a few leading cases in which they have been construed. In Johnson v. Railroad, 163 Pa. St. 127, the precise question at issue was whether the acceptance of benefits by the injured employee should be allowed to operate under the beneficiary agreement as a release of the claim for damages against the company. Speaking of the stipulation for an election by the injured employee, the court say: "But even in cases of injury through the company's negligence there is no waiver of any right of action

that the person injured may thereafter be entitled to. It is not the signing of the contract but the acceptance of the benefits after the accident that constitutes the release. The injured party, therefore, is not stipulating for the future, but settling for the past; he is not agreeing to exempt the company from liability for negligence, but accepting compensation for an injury already caused thereby. He may as well accept it in installments as in a single sum, and from an appointed fund to which the company has contributed, as from the company's treasury as a result of litigation. The substantial feature of the contract which distinguishes it from those held void as against public policy is that the party retains whatever right of action he may have until after knowledge of all the facts, and an opportunity to make his choice between the sure benefits of the association or the chances of litigation. Having accepted the former he cannot justly ask the latter in addition.''

A similar conclusion was reached by the Supreme Court of New Jersey in Beck v. Railroad, 63 N. J. L. 232, 43 Atl. 908. The court observes ''the law will not tolerate a contract between parties by which one agrees that the other may commit a tort to his injury with impunity and without liability to answer for damages,'' but hold that the contract in question did not come within that rule for the reason that the member was not debarred thereby from bringing an action for damages and that the exclusion of such right could arise only by his exercise of a fair option the contract afforded him. The propositions that the contract was *ultra vires* and lacked a sufficient consideration were decided in the negative and, further, it was held that such contract was ''not of insurance but of beneficial relief.''

A clear statement of the principal rule followed in the cases just reviewed appears in the following excerpt from the decision in Railroad v. Moore, 152 Ind.

l. c. 353: ''If disabled without fault of the company, the living or death benefit may be drawn from the fund without question. If by the fault of the company, he may, after injury, elect whether he will accept the benefits from the fund, or pursue his remedy at law against the company. And that, when he signs the contract, the only obligation assumed is that if injured by the fault of the company, he will not seek double compensation, by pursuing both the relief fund and the company. It further shows, in effect, that when disability comes, and all the facts and conditions are known to him, he is at perfect liberty then to choose between the relief fund and the treasury of the company,—whether he will accept the sure and immediate benefits from the fund, or take his chances in the courts against the company, and that an adoption of one course shall be held to be an abandonment of the other. This is the essence of the contract pleaded. It bears no semblance to an absolute contract for the release of the company from liability, under the provisions of the statute.''

Numerous other authorities which announce the same doctrine are cited in appellant's brief. In the case of the present defendant v. Miller, 76 Fed. 439, the Circuit Court of Appeals of the Eighth Circuit had under consideration a damage suit prosecuted by the injured employee in which a demurrer to defendant's answer, which pleaded a release growing out of the acceptance by the plaintiff of relief benefits after his injury, had been sustained. In the majority opinion written by THAYER, J., the judgment was affirmed on the ground that defendant had failed to allege the department was not sustained entirely by the accumulations of ''sums deducted from the wages of those who were members'' and that it was supported in part by defendant. It is said: ''In a case of this character, where the contract invoked as a defense lies close to the line dividing agreements that are lawful from

those which are unlawful, it is proper to require the defendant to set out the arrangement which existed between itself and its employees, in the form of a relief department with such fullness and certainty that the court may be able to say from an examination of the same that the arrangement is fair and reasonable, and that it is neither objectionable on grounds of public policy nor voidable for want of a valuable consideration.''

In a concurring opinion Judge CALDWELL explicitly stated that such contracts should be declared nonenforceable ''in so far as they attempt to release a railroad company from liability for injuries inflicted on its employees through its negligence'' and ventured the prediction that such contracts ''must ultimately be so declared by all courts.''

The Supreme Court of Nebraska in Walters v. the present defendant, 74 Neb. 551, sustained the forfeiture stipulation upon the conclusion that the plaintiff was as much at liberty to choose whether she would sue the railway company or the Relief Department as she would have been in any other imaginable case, but the consequences of such choice are to be determined, not by the general rules of law, but by the terms of the contract by which the deceased had bound himself and her. But in the later case of the same defendant against Healy, 111 N. W. 598, that court changed its view of the law applicable to such contracts, overruled the Walters case, and held that ''the policy of our law is to furnish every citizen with speedy redress for any injury that he may receive in person or property, and a contract which imposes a penalty upon seeking such redress is contrary to that policy.''

It is deemed unnecessary further to review authorities relating to this subject. The great majority of the courts—among them courts of the highest reputation for judicial probity and wisdom—follow the rule defined in the Pennsylvania and New Jersey cases,

that since, when the right of the employee to sue his employer for damages inures, the contract places him under no legal compulsion to release his cause but leaves him free to prosecute it in the courts if he chooses, his employer cannot be said to have contracted for immunity from the consequences of his own future wrongs.

With all due respect for a rule so strongly fortified by the approval of such high authority, we find ourselves unable to give it our sanction, and feel constrained to approve the antithetical doctrine of the concurring opinion of Judge CALDWELL in the Miller case, supra, and of the Nebraska court in the Healy case that to the extent that the relief contract seeks to provide in advance for the release of the defendant from the legal  consequences of its future wrongs, it will be held unconscionable and therefore, nonenforceable, regardless of whether or not it has the support of a consideration moving from the defendant to the plaintiff.  It would be just as reprehensible in law for an employer to pay for the contractual privilege of wrongfully injuring his servant in the future as to stipulate for such privilege without a consideration and it is difficult to perceive any just reason on which the doctrine of the majority opinion in the Miller case may rest, so far as the question of public policy is concerned.

Whether defendant has given anything of value to its employees for the privilege the contract seeks to bestow upon it, or is guilty of having tried to acquire such a valuable right at the sole expense of its employees, is immaterial.  With respect to the forfeiture, the contract can have but one meaning, viz., that the employee member has agreed in advance that his right to a relief benefit for a disability resulting from an injury negligently inflicted by his employer shall be turned into an instrument to coerce him into releasing his claim for damages.  Some of the courts

fall into the palpable error of concluding that it would be wrong to allow the employee to receive the benefit without impairment of his claims for damages, since the effect would be to give him double indemnity for the same injury. Would he be receiving double indemnity for the same wrong? His relief contract upon which he has paid the assessed dues, if not a contract of insurance, is in the nature of insurance. If he had it in another company his receipt of the indemnity it afforded would have no effect upon his claim against the wrongdoer who injured him. His right to insurance and his right to damages for a tort bear no relation to each other. A wrongdoer cannot excuse himself from liability on the ground that his victim is fully insured.

The contract in relation to the forfeiture did not give, and was not intended to give, plaintiff any fair option. It said to him, "If you dare bring suit against defendant for damages you lose your right to disability benefits of the value (as found by the court) of almost $2500" and, on the other hand, "If you accept any of the benefits, you lose your right to sue the defendant for damages." It would be a strange option that would allow the possessor of two rights to exercise one only, on pain of forfeiting the other. The mere fact that a stipulation so one-sided was inserted in the contract, conclusively demonstrates that it was put there for the sole purpose, and with the confident expectation, that in the vast majority of negligent injuries, the employee would accept the sure, certain and, of course, vastly smaller relief the contract afforded, in preference to venturing upon the uncertain sea of litigation and, perchance, losing his all. No epigrammatic phrasing or clever euphemism can disguise the hard, ugly fact that this was a contract for immunity from the legal consequences of future torts. It is idle to confuse the subject with the argument that defendant's position is improved by

the fact that the relief contract also provides benefits for disabilities resulting from causes other than the negligence of defendant. The forfeiture deals only with negligence cases, is a separable covenant, and the question of its validity has nothing to do with other benefits. What right has defendant to say to plaintiff ''Because you had acquired the right to other benefits for which you paid the price demanded, I am entitled to contract with you in advance for immunity from responsibility for my own future negligence.''

But if we should be wrong in our conclusion respecting the general law concerning contracts of this character, we think as to an injury sustained by a railroad employee while engaged in interstate commerce service, the rule we have stated was intended to be expressed by Congress in section Five of the Employers' Liability Act, approved April 22, 1908, (35 Stat. at Large, 65, U. S. Comp. Stat. Supp. 1909, p. 1171.) That section provides: ''That any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void: *Provided,* That in any action brought against any such carrier under or by virtue of any of the provisions of this Act, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.''

In clear and unmistakable terms it declares that to the extent that any contract, rule, regulation or device made for that purpose by the carrier shall enable it to exempt itself from any liability created by this Act—such contract, rule, regulation or device shall be void. That Congress had in mind just such contracts as that under consideration and intended that they should fall within the scope of the denunciation

is shown in the context which gives to the carrier the right to set off against the plaintiff's claim any . . . relief, benefit, or indemnity it may have paid "on account of the injury." In other words, contract or no contract, the fact that defendant has paid relief benefits will not be allowed to work a forfeiture of the plaintiff's right to maintain his action for damages subject to the right of defendant to set off benefits already paid. It was not necessary to restate in the proviso the rule distinctly stated in the principal enactment that a contract devised with the intent of enabling the carrier "to exempt itself from any liability created by this act shall, to that extent, be void, regardless of its terms." We conclude that plaintiff did not lose his right to benefits by bringing an action for damages and prosecuting it to an unsuccessful end.

The defense that plaintiff has forfeited his right to benefits because of his failure to comply with rules 55 and 62 is not tenable in view of the agreed fact that, before the expiration of the period for presenting his claim for relief, defendant acknowledged his claim and tendered him monthly benefits for two months. This, of course, was a waiver of formal compliance with rules relating to notice and presentment of claim.

There is no prejudicial error in the record and the judgment is affirmed.

All concur.