JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, a Corporation, Plaintiff,

v.

Mary DAWSON and Antoinette Dawson, Defendants,

Mary Dawson, Defendant-Respondent,

Antoinette Dawson, Defendant-Appellant.

No. 28991.

St. Louis Court of Appeals.

Missouri.

April 19, 1955.

Henry C. Lamkin, St. Louis, for plaintiff.

Jack H. Ross, Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for appellant.

Frank Coffman, Thos. M. Gioia, St. Louis, for respondent.

SAM C. BLAIR, Special Judge.

Interpleader. John Hancock Mutual Life Insurance Company filed a petition describing itself as an indifferent stakeholder of the proceeds of a policy insuring the life of Thomas Dawson, deceased. Named as defendants and rivals for the fund were Mary and Antoinette Dawson. Thomas Dawson was the husband of Mary for many years. Differences arose. They executed a property settlement. They were divorced a few days afterward. Thomas married Antoinette a few weeks later. Eleven months thereafter he died.

The settlement Thomas and Mary executed embraced a stipulation that the insurance policy "be turned over" by Mary to Thomas "along with 2 $50.00 Series 'E' United States Government Bonds." The only reference in the settlement to the policy or to the bonds is this one. They were immediately delivered to Thomas by Mary. The right to change the beneficiary was reserved to Thomas by the terms of the policy. Mary was beneficiary. One bond was in the name of Thomas and payable to Mary "on death." The other was payable to Thomas "or" Mary. Thereafter the policy and bonds remained in the possession of Thomas or Antoinette until his death. No action of any kind was taken by him to change the beneficiary of the policy or the payee of the bonds. Mary remained the named beneficiary of the policy and the named payee of the bonds when he died, and she so remains at this time.

■ Answering the petition, Mary and Antoinette each filed pleadings challenging the claim of the other, asserting her own right to the proceeds of the policy, and bringing into issue the ownership of the bonds. Both claimed the bonds. The appropriateness of the pleadings is not questioned and this description suffices in consequence. Mary based her claim on her status as named beneficiary of the policy and as named payee of the bonds. Antoinette pleaded the property settlement, alleging Mary had accepted and retained its benefits and was estopped to deny its burdens. Its burdens, according to her, were relinquishment by Mary of all right ever to claim the proceeds of the policy and bonds, even though Thomas might permit her to remain the beneficiary and the payee until he died, as he did. If the stipulation relating to the policy and bonds warrants this construction, Antoinette is right. For one who accepts the benefits of a contract or settlement is estopped to disaffirm its burdens. Runnels v. Lasswell, Mo.App., 219 S.W. 980, 981; Hartman v. Chicago, B. & Q. R. Co., 192 Mo.App. 271, 182 S.W. 148; Fox v. Windes, 127 Mo. 502, 30 S.W. 323; 31 C.J.S., Estoppel, §§ 109, 110.

■■ We regard the stipulation as ambiguous and its meaning unascertainable except by construction. Whether we can arrive at its meaning by construction depends on the state of this record and this record is meager. The entire settlement can be examined for aid in determining whether the stipulation was intended by the signatories as a relinquishment by Mary of all right ever to claim the proceeds of the policy and the bonds. Hubbard v. Hubbard, Mo.App., 264 S.W. 422; 7 Mo.Dig., Contracts, ■■■ It was obviously drafted by a legal technician and all stipu-

lations, except the one under scrutiny, were expressed in conventional and precise legal phraseology. For illustration, the parties agreed that real estate held by them "as a tenancy by the entirety," referred to by its legal description, should be "conveyed" by Thomas to Mary through a "straw man chosen" by Mary. Mary was to pay to Thomas $2,000 "for his share in said estate by the entirety." A judgment for "temporary alimony and maintenance" was "to be satisfied." The court, it was agreed, could "set an amount" and order Thomas to pay it to Mary "for support and maintenance of the minor children." As consideration for all agreements, Mary was to "relinquish all rights she may have against" Thomas "for alimony, both temporary and permanent, attorney's fees, court costs, and dower and other statutory rights of every kind she may have in his estate."

These legalistic arrangements of obligations and rights strike us as quite significant when juxtaposed with the stipulation dealing with the policy and bonds. For the latter is the only one of all the stipulations which is expressed without legal exactitude and the only one which leaves any doubt about its meaning. In all other instances, the parties provided for obligations and relinquishments of rights, and defined them, by employing legal language which was absolute and unequivocal and which anciently had come to possess an accepted and settled signification in law. Adjudged decisions and standard texts have not revealed to us that the words "turn over" or "turned over" have ever come to possess any accepted and settled legal signification. We believe therefore that the signatories regarded them and we should regard them in the ordinary or lay sense. In that sense they can be and frequently are employed to denote a variety of actions, each depending for a determination of its significance on clarifying and explanatory evidence. For example, they may indicate a delivery following a sale, a gift, a loan, a bailment for hire, or a delivery for various other purposes which readily come to mind. Certainly they do not import any

action which is unique in law or in character and always of the same significance.

Accordingly, we lack a legal formula for measuring their meaning as they stand in the present stipulation, and cannot do so at all unless we are aided by clarifying and explanatory evidence. The record contains no evidence settling their meaning. Some evidence of some aid is present. It is Antoinette's evidence and it militates against her theory. The two witnesses she presented were permitted to testify that Thomas told them he "intended" to make her beneficiary of the policy. One added that Thomas "was planning to change it but he never got around to it before he died." The other stated that Thomas said he "intended" also to make her payee of the bonds. The competency of this evidence is not questioned by the parties on this appeal. State ex rel. Gneckow v. Hostetter, 340 Mo. 1177, 105 S.W.2d 928. Each argues indeed that it supports an inference in her favor. So we view it as being in the record for whatever it may be worth. Madison v. Taxi Owners Ass'n, Mo.App., 148 S.W.2d 106, 108; DeMoulin v. Roetheli, 354 Mo. 425, 434[3], 189 S.W.2d 562, 565[3, 4]. If it indicates anything of relevance, it is that Thomas recognized that delivery of the policy and the bonds to him by Mary had given him control of them and the right and opportunity to designate Antoinette as beneficiary and payee. It indicates that Thomas was also aware that Mary was then the payee and the beneficiary and that Antoinette would not be the recipient of the bonds and of the proceeds of the policy if his death came before he made the requisite changes. It does not establish that Thomas construed the stipulation as meaning that Mary would be excluded if he allowed her to remain as beneficiary and payee until his death.

Our courts have declared that estoppels are not favorites of the law and will not be lightly invoked, for oftentimes they shut out the truth. National Match Co. v. Empire Storage & Ice Co., 227 Mo. App. 1115, 58 S.W.2d 797; Wyatt v. Wil-

hite, 192 Mo.App. 551, 183 S.W. 1107; S. S. Allen Grocery Co. v. Bank of Buchanan County, 192 Mo.App. 476, 182 S.W. 777. One who asserts an estoppel has the burden of establishing the facts on which it rests. 11 Mo.Dig., Estoppel, ▮▮▮ Every fact essential to create it must be established by clear and satisfactory evidence. State ex rel. Richards v. Fidelity & Casualty Co. of New York, Mo.App., 82 S.W.2d 123, 128; 21 C.J., Estoppel, § 269, p. 1252; 31 C.J.S., Estoppel, § 162. The conduct or writing on which reliance is placed must be absolute and unequivocal, and must be certain to every extent, for mere argument, inference, or intendment cannot support an estoppel. National Match Co. v. Empire Storage & Ice Co., supra; Gnekow v. Metropolitan Life Ins. Co., Mo.App., 108 S.W.2d 621, 625[8]; Sutton v. Dameron, 100 Mo. 141, 13 S.W. 497; 19 Am.Jur., Estoppel, § 199; Bigelow on Estoppel, 6th Ed., pp. 496, 641; Herman's Estoppel and Res Judicata, Vol. I, §§ 14, 18.

▮▮▮ We have recited every circumstance and fact in this record to which resort can be had for assistance in construing the stipulation. We deal only with the record presented to us and are not free to conjecture or imagine what could be decided if other evidence were present or if we were considering a different record. Viewing the stipulation apart from the statements that Thomas "intended" to change the beneficiary and payee, or coupling it with those statements, only conjecture and inference could be argued to uphold a construction that the signatories intended that Mary should relinquish all right ever to claim the bonds and the proceeds of the policy even if Thomas permitted her to remain payee and beneficiary until his death. Consequently the stipulation is not absolute, unequivocal and certain to every extent, and the construction urged by Antoinette can rest only on conjecture, inference, and intendment. This plainly prevents it from standing as an estoppel.

▮▮▮ The decisions relied on by Antoinette do not aid her. In Rhoads v. Rhoads, 342 Mo. 934, 943, 119 S.W.2d 247,

252, the ruling was merely that a stipulation entered in contemplation of divorce did not include a release by the wife to the husband of her claims to land which he had previously deeded to her. It is of no significance here. In Mutual Life Ins. Co. of New York v. Tuemler, Mo.App., 251 S.W. 727, 728, one of the two rivals for the proceeds of insurance pleaded estoppel against the other. Present were adequate averments and sufficient evidence that the other claimant, for a consideration, had "agreed to execute and deliver to deceased written assignments of all her right, title, or interest in the policies in question, it being the intention of the deceased to thereafter change the beneficiary" and that subsequently she "refused to execute said assignments of said policies, as she had agreed to do." The deceased substantially complied with the requirements of the insurer for changing the beneficiary. Due to the insurer's fault, the change was not made. The ruling was that the agreement, clearly pleaded and plainly established, constituted an estoppel and that the beneficiary would be regarded as changed. This record presents no such pleading or evidence. Persons v. Prudential Ins. Co. of America, Mo.Sup., 233 S.W.2d 729, and Mutual Life Ins. Co. of Baltimore, Md. v. Burger, Mo. App., 50 S.W.2d 765, rule only that strict compliance with the terms of an insurance policy prescribing the method of changing the beneficiary is waived, if the insured substantially complies with those terms, and if the insurer, following insured's death, pays the proceeds of the policy into court and prays for a determination of the true beneficiary. This is settled. But it does not aid Antoinette. Thomas made no effort at all to change his beneficiary. Nor did the insurer's action in paying the proceeds of the policy into court in this case, as Antoinette seems to think, affect any right Mary had or aid the claim of Antoinette. The proceeds of the policy belonged either to Mary or to Antoinette on the death of Thomas. The rights of the lawful beneficiary became definitely fixed and vested at the very moment he died. No action of the insurer could thereafter destroy

the rights of Mary or confer any right on Antoinette. Brotherhood of Railroad Trainmen v. Adams, 222 Mo.App. 689, 698, 5 S.W.2d 96, 101.

■ ■ Mary complied with the stipulation. She "turned over" the policy and bonds to Thomas. Thenceforward and until his death he knew he had the right and the opportunity to effect the changes essential to make Antoinette, or anyone he chose, the recipient at his death. There is no question regarding his mental capacity or his physical strength, and no evidence that he was prevented from exercising his rights by any excusatory circumstance. Aware that Mary was beneficiary and payee, he did not even undertake to make a change. As a result of his inaction, or choice, Mary remains the named beneficiary and the named payee. Why he failed to make the change this record does not enable us to say. It is not beyond credulity that he actually *chose* to make no change. Mary was the mother of his three children. She was rearing two of them without any aid from him, for he failed to pay the maintenance agreed on in the settlement. But be this as it may, Antoinette has offered us nothing to support her own claim and no evidence to defeat Mary's. Clearly this record affords no basis for holding that Mary, named payee and beneficiary, is not entitled to the bonds and to the proceeds of the policy. Gnekow v. Metropolitan Life Ins. Co., supra, 108 S.W.2d 624–625. The trial court ruled that she was and entered its decree accordingly. Its ruling was for the right party. The judgment must be affirmed.

It is so ordered.

RUDDY, Acting P. J., concurs.