Devon ISING, Plaintiff-Appellant,

v.

BARNES HOSPITAL and Urban Investigation, Inc. d/b/a Wesley R. Chism and Associates, Defendants-Respondents.

No. 47563.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 29, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 8, 1984.

Application to Transfer Denied
Sept. 11, 1984.

---

Louis Gilden, Thomas Maue, St. Louis, for plaintiff-appellant.

Dennis G. Collins, Larry B. Luber, Gerald M. Richardson, William J. McHugh, St. Louis, for defendants-respondents.

CRIST, Presiding Judge.

On February 7, 1983, Barnes Hospital terminated plaintiff's at will employment. Plaintiff had refused to sign a consent form stating she was voluntarily taking a polygraph examination and she refused to waive all liability against the polygrapher and Barnes arising from the examination. Plaintiff sought an injunction to reinstate her employment and damages. Defendants' motion to dismiss were taken with the evidence presented at the preliminary injunction hearing. From the trial court's granting of defendants' motion plaintiff appeals. We affirm.

Plaintiff was a registered respiratory therapist with no oral or written contract defining her employment at Barnes. While she was employed there, two supervisors were subjected to harassment and vandalism. The acts included: anonymous telephone calls received at home and at work; the destruction of an overcoat; sugar placed in an automobile gas tank; spray painting the side of an automobile; scratching of the finish of another automobile; dead fish deposited in a supervisor's home mailbox; the placement of several pounds of raw liver in the same mailbox; human feces left on a supervisor's office chair; the destruction of a supervisor's office plants; and the receipt in the mail of two bullets attached to a threatening note.

Understandably, the management at Barnes became concerned about the welfare and morale of their employees, especially after the receipt of the bullets and threat in the mail. At that point the Federal Bureau of Investigation was called into the matter. A decision was made to have members of the respiratory department take polygraph examinations as part of the investigation. Defendant polygrapher was retained to conduct the examinations at its office for an agreed upon price for each examination.

Plaintiff was told she had to submit to the polygraph examination, satisfactorily clear herself of complicity in the vandalism, or be fired. Before administering a polygraph examination, polygrapher required each examinee to execute a consent form. The consent form stated the examinee was voluntarily taking the examination for the mutual benefit of the examinee, the polygrapher, and Barnes Hospital. It contained, in effect, complete *Miranda* warnings and allowed polygrapher to release results of the examination to Barnes. It then purported to have the examinee release and hold harmless polygrapher and Barnes from any negligent or intentionally tortious conduct arising from the examination. It concluded by warning the examinee the release form was a legally binding contract and if not completely understood, the advice of an attorney should be sought. The examinee was to sign the form before a witness prior to the examination and reaffirm it before a witness at the examination's conclusion.

Polygrapher testified the consent form tracked the wording of forms used by the Missouri Polygraph Association. Polygrapher knew of no polygrapher in the United States who would conduct a polygraph test without obtaining a similar consent form.

Plaintiff told Barnes she was willing to take the polygraph examination but would not sign the consent form. She thought it anomalous she should not tell the truth by stating on the form she was taking the test voluntarily, but then be expected to tell the truth during the examination. Further, plaintiff objected to releasing polygrapher and Barnes from any liability. Barnes informed plaintiff the signing of the consent form and the taking of the polygraph examination were conditions of continued employment. Plaintiff maintained her objections to signing the consent form and Barnes subsequently discharged her for refusing to cooperate in a hospital investigation.

Plaintiff admits her employment was terminable at will. The petition claims, however, that her discharge for refusing to

sign the consent form "is contrary to the dictates of common morality and humanity and is contrary to the public policy of this state." She asserts a discharge contravening public policy is actionable as an exception to the traditional at will employment rule that an employer may fire an employee for any reason or no reason in the absence of a contract for a definite term or a contrary statutory provision. See *Christy v. Petrus*, 365 Mo. 1187, 295 S.W.2d 122, 124 (Mo. banc 1956); *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo.1981), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 642, 70 L.Ed.2d 619 (1981); *Lundberg v. Prudential Ins. Co.*, 661 S.W.2d 667, 668 (Mo.App.1983).

Plaintiff finds some support for her position in scholarly critiques of the at will employment doctrine. See, Comment, *Fire at Will: An Analysis of the Missouri At Will Employment Doctrine*, 25 St.L.U.L.J. 845 (1982); Krauskopf, *Employment Discharge: Survey and Critique of the Modern at Will Rule*, 51 U.M.K.C.L.Rev. 189 (1983); Comment, *Employment at Will: When Must An Employer Have Good Cause For Discharging an Employee?* 48 Mo.L.Rev. 113 (1983); Note, *Protecting Employees at Will Against Wrongful Discharge: The Public Policy Exception*, 96 Harv.L.Rev. 1931 (1983).

Plaintiff concedes Barnes had the right to require her to submit to the polygraph examination. *Compare, Polsky v. Radio Shack*, 666 F.2d 824 (3rd Cir.1981) (Pennsylvania statute prohibiting polygraph examination as condition of employment; purported waiver and release held invalid and discharged employee entitled to action for wrongful discharge). All the exceptions to the at will employment doctrine presented by plaintiff, however, involve a violation of a clearly stated and well established public policy. Furthermore, these policies are most commonly embodied in statutes.

The Missouri legislature has provided an action for wrongful discharge but only for employees enjoying a definite term of employment. Section 290.130, RSMo 1978. Plaintiff's argument as to why Barnes vio-

lated public policy in discharging her relies mainly on judicial intolerance of an employee's waiver of liability to an employer for negligence arising from work conditions. See *Blanton v. Dold*, 109 Mo. 64, 18 S.W. 1149 (1892).

The public policy relied upon by plaintiff operates to invalidate and render unenforceable such agreements between an employer and employee. See *Flaiz v. Chicago, B. & Q. R.R. Co.*, 194 Mo.App. 472, 195 Mo.App. 714, 184 S.W. 917, 920 (1916); *Hartman v. Chicago, B. & Q. R.R. Co.*, 192 Mo.App. 271, 182 S.W. 148, 152 (1916). See also, Restatement of the Law of Contracts (Second), § 195. We find a substantial difference between a policy which voids a transaction and one which gives rise to an independent cause of action.

Exacting an employee's release of liability contravenes the policy expressed in § 55 of the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (1982). In *Culver v. Kurn*, 354 Mo. 1158, 193 S.W.2d 602, 604 (1946), the court found the release signed by the employee after injury ineffective under FELA § 55. Nevertheless, the court refused to hold § 55 prevented the employer from terminating an at will employee. Similarly, in *Bay v. Western Pacific R.R.*, 595 F.2d 514 (9th Cir.1979), the court held the policy embodied in § 55 constituted a "shield," but did not provide a "sword" to employees sufficient to ground a separate cause of action.

In effect, plaintiff urges us to extend public policy protecting employees from the consequences of the release to enable employees to base an action for wrongful discharge on an attempted release. Insofar as this proposal amounts to a change in the law, plaintiff cannot claim her discharge violated a clearly stated and well established public policy of this state.

Our conclusion not to create a new public policy exception to at will employment relationships based on an attempted release of liability is similar to the result reached recently by New York's highest court. In *Murphy v. American Home Products, Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461

N.Y.S.2d 232 (1983), the court rejected the appellant's proposed public policy exception to the employment at will rule. New York has enacted a statute similar to § 290.130 protecting employees of a definite term from wrongful discharge. The court recognized the far reaching consequences a decision to alter the existing at will employment rule would create. The court deferred to the legislature's superior vantage point to reflect public policy after eliciting viewpoints from more widely varied segments of the community, the legislature's ability to develop more comprehensive standards and to then orderly implement a change if one was deemed desirable.

In the present case Barnes could have discharged plaintiff without having given her an opportunity to exonerate herself from the acts of vandalism. If Barnes could discharge plaintiff with impunity without demanding a release of liability, we find Barnes could discharge plaintiff for failure to execute the release. Missouri's public policy operates only to deny effect to the purported release.

Plaintiff's second point concerns the trial court's finding that polygrapher was an independent contractor. Our disposition of plaintiff's first point leaves little to be said other than polygrapher came within the definition of an independent contractor set forth in *Madsen v. Lawrence*, 366 S.W.2d 413, 415 (Mo.1963). See also, Restatement of the Law of Agency (Second), § 220.

Judgment affirmed.

PUDLOWSKI and SIMON, JJ., concur.