**Norma Jean GIBSON, Appellant,**

v.

**Mileane GIBSON–CATO, Personal Representative of the Estate of John Boyd Gibson, Sr., John Boyd Gibson, Jr., Mileane Gibson–Cato and Dewey Norton Gibson, Respondents.**

No. 20998.

Missouri Court of Appeals, Southern District, Division Two.

April 7, 1997.

John Sims, Sims, Johnson, Wood & Higdon, Neosho, for appellant.

M. Roger Carlin, Evenson, Carlin & LePage, Pineville, for respondents John Boyd Gibson, Jr., Mileane Gibson–Cato and Dewey Norton Gibson.

No appearance for respondent Mileane Gibson–Cato, Personal Representative of the Estate of John Boyd Gibson, Sr.

CROW, Presiding Judge.

This is a dispute between a decedent's widow and his children (by an earlier spouse) over the proceeds of two life insurance policies on the decedent's life. The trial court awarded the proceeds to the children. The widow appeals.

We begin our account of the facts by introducing the individuals in the narrative and assigning each a designated name for convenience.

John Boyd Gibson, Sr. (the decedent): "J. B." [1]

Norma Jean Gibson (J. B.'s widow): "Norma."

John Boyd Gibson, Jr. (J. B.'s elder son): "John."

Mileane Gibson–Cato (J. B.'s daughter): "Mileane."

Dewey Norton Gibson (J. B.'s younger son): "Dewey."

Bertha Gibson (J. B.'s earlier spouse; mother of John, Mileane and Dewey): "Bertha."

\* \* \*

Bertha died March 31, 1991, survived by J.B. (her husband) and John, Mileane and Dewey.

The policies mentioned in the first sentence of this opinion were in force when Bertha died.[2] Each was issued by General American Life Insurance Company ("General American"). In the trial court, all parties agreed to treat the policies as a single policy instead of two. Accordingly, we do so in this opinion. The insured—J. B.—had the right to designate the beneficiary or beneficiaries of the policy.

At trial, an official of General American identified Exhibit 2 as a "beneficiary designation" from J.B. dated April 25, 1991 (twenty-five days after Bertha died). Exhibit 2 designates John, Mileane and Dewey as beneficiaries.

In the summer of 1991, a few months after the beneficiary designation referred to in the preceding paragraph, J.B. met Norma in Texas. He had gone there to visit his mother, his brother and Mileane.[3]

J.B. married Norma December 2, 1991.

The General American official referred to *supra* produced a second "beneficiary designation" at trial. This one, identified as Exhibit 3, was dated April 20, 1992, and designates Norma as beneficiary.

J.B. died November 22, 1993, in McDonald County, Missouri, still married to, but living apart from, Norma.

Norma commenced this suit by filing a petition for declaratory judgment, asking the trial court to determine whether she is sole beneficiary of the policy. Named as defendants were Mileane (in her *official* capacity as personal representative of J. B.'s estate in

---

**1.** The decedent's widow testified she called him J.B. Our use of initials or forenames is for brevity and clarity. We mean no disrespect.

**2.** We draw this inference because one policy shows it was "issued effective January 1, 1987."

The other shows it was "issued effective January 1, 1988."

**3.** Mileane's age is not revealed in the record; however, it is apparent from the evidence that she, John and Dewey are adults.

McDonald County, and also *individually*), together with John, Dewey and General American.

In response, John, Mileane (in her individual capacity) and Dewey ("Respondents")[4] filed a first amended answer and counterclaim alleging, *inter alia*, that when J.B. executed Exhibit 3 he was hospitalized at "Ozark Rehabilitation Center" because of physical infirmity and mental defect attributable to alcohol, and was unable to know or appreciate the consequences of his actions. Therefore, pled Respondents, the designation of Norma as beneficiary "should be considered a nullity," leaving Respondents as sole beneficiaries.

In reply, Norma averred that even if Respondents' allegations were true, J.B. subsequently became aware of Exhibit 3 and understood he had a right to change it, but did not. Those circumstances, pled Norma, "constituted a waiver."

General American filed a pleading asking the trial court to order it to deposit the insurance proceeds with the court and to discharge General American from further liability.

Mileane, in her official capacity as personal representative, asked the court determine ownership of the proceeds.

We glean from the record that the court ordered General American to pay the proceeds (some $91,645 including interest) into J. B.'s "Estate." General American did so, whereupon the court discharged General American as a party.

Following a two-day non-jury trial, the court entered a judgment containing factual findings and legal conclusions. One legal conclusion was that J.B. could make a valid beneficiary designation only if he possessed sufficient mental capacity to act in a reasonable manner. The court stated that in order to hold J.B. possessed such capacity, the court had to find J.B. was of sound mind, understood the ordinary affairs of his life, knew the nature and extent of his property, knew the persons who were the natural ob-

jects of his bounty, and appreciated his natural obligation to them.

After that statement, the court found:

"[O]n April 20, 1992, [J.B.] did not then possess sufficient mental capacity, to understand in a REASONABLE MANNER, the nature and effect of the execution of [Exhibit 3] changing the primary beneficiaries of the ... Policy from his children ... to ... Norma[.]"

The court further found that throughout the years 1992 and 1993 until the date he died, J. B.'s actions were ambivalent and there "was a continual flip flop in regards to everything he did." The court determined there were times during 1993 when J.B. acted rationally, but there were other times that year when he acted "very irrationally." Accordingly, said the court: "The Court does not find a waiver therefore by his conduct."

The judgment declared Exhibit 3 "invalid, void and of no effect," and designated Respondents as "sole, rightful and absolute beneficiaries" of the policy. This appeal followed.

■　The first of Norma's two points relied on is:

"That the court erred in its findings and determination that Respondents met their burden of proof by clear, convincing and cogent evidence that on April 20, 1992, [J.B.] was unable to understand the nature and extent of his property. That he was unable to know the persons who were the natural objects of his bounty and that he could not intelligently weigh and appreciate his natural obligations to those persons because there was no substantial evidence presented for the court to make such findings, and also because it is against the weight of the evidence to such an extent that this court should have a firm belief that the judgment is wrong."

Rule 84.04(d), Missouri Rules of Civil Procedure (1997), reads, in pertinent part:

"The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and

---

4. John, Mileane (in her individual capacity) and Dewey are the only parties who filed a brief as respondents in this appeal. Consequently, we henceforth refer to them collectively as Respondents.

wherein and why they are claimed to be erroneous...."

The purpose of the rule and the necessity of obeying it are fully explained in the leading case of *Thummel v. King,* 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Norma's first point supplies no hint as to wherein and why the evidence was insufficient to support the trial court's findings, and yields no clue as to wherein and why the findings were against the weight of the evidence. Missouri cases have consistently held such points present nothing for review. *Porter v. Emerson Electric Co.,* 895 S.W.2d 155, 160–61 (Mo.App. S.D.1995); *Blackwelder v. Blissett,* 861 S.W.2d 343, 344[1] (Mo.App. S.D.1993); *Balderree v. Beeman,* 837 S.W.2d 309, 322[8] (Mo.App. S.D.1992); *Brown v. Mercantile Bank of Poplar Bluff,* 820 S.W.2d 327, 339[21] (Mo.App. S.D.1991); *Phillips v. Phillips,* 819 S.W.2d 413, 415–16 (Mo.App. S.D.1991); *Best v. Culhane,* 677 S.W.2d 390, 394 (Mo.App. E.D.1984); *Tripp v. Harryman,* 613 S.W.2d 943, 950 (Mo.App. S.D. 1981).

In obedience to those cases, we hold Norma's first point presents nothing for adjudication in this appeal.

Her second (and final) point is:

"That the trial court erred in canceling the employee beneficiary designation[5] (Pl.Ex.3) dated April 20, 1992, because the facts are undisputed that during 1993 until the death of [J.B.] he was competent, he knew his wife was the beneficiary on his insurance, he had the forms to make a beneficiary change, and he knew of his right to make a beneficiary, all of which amount to a waiver."

We preface our ruling on Norma's second point with two observations.

First, the point makes no attack on the trial court's finding that J.B. did not possess sufficient mental capacity to understand the effect of Exhibit 3 on April 20, 1992. Because of that, and because we earlier held Norma's first point (which did attack that finding) presented nothing for review, that finding remains intact. Consequently, the remainder of this opinion is based on the premise that when J.B. executed Exhibit 3,

he did not have sufficient mental capacity to make a valid change of beneficiary. *See: Rapp v. Rapp,* 238 S.W.2d 80, 91[9] (Mo.App. 1951).

Our second observation about Norma's second point is that it is arguably deficient under Rule 84.04(d) and *Thummel,* 570 S.W.2d at 684–88. Although the point lists certain "facts," it fails to explain wherein and why they amount to a "waiver," it does not identify what was waived, and it does not enlighten a reader as to how the "waiver" renders the judgment erroneous.

Nonetheless, we shall endeavor to divine the import of the point from the argument that follows it, a task we are not obliged to undertake. *J.C. Jones and Co. v. Doughty,* 760 S.W.2d 150, 153 (Mo.App. S.D.1988); *Abney v. Farmers Mutual Insurance Co. of Sikeston,* 608 S.W.2d 576, 577–78[2] (Mo.App. S.D.1980). By doing so, we do not imply the point satisfies Rule 84.04(d).

Norma's argument cites four cases, two of which are cited for the proposition that waiver is the intentional relinquishment or abandonment of a known right. Neither case involved a change of beneficiary of an insurance policy, and the argument does not explain how either case demonstrates the trial court erred in the instant case.

The third case cited in the argument is *John Hancock Mutual Life Insurance Co. v. Dawson,* 278 S.W.2d 57 (Mo.App.1955). There, Thomas was the husband of Mary. *Id.* at 59. She was the beneficiary of a policy insuring his life. *Id.* He had the right to change the beneficiary. *Id.* Differences arose between them, and they executed a property settlement. *Id.* It provided she would turn the policy over to him. *Id.* She did. *Id.* They were divorced soon afterward. *Id.* Thomas subsequently married Antoinette. *Id.* He died within a year thereafter, without changing the beneficiary from Mary to Antoinette or anyone else. *Id.* Antoinette argued that Mary, by accepting the benefits of the property settlement, was estopped from claiming the policy proceeds. *Id.* The trial court ruled for Mary, and the appellate court affirmed. *Id.* at 62. The opinion said:

"[U]ntil [Thomas'] death he knew he had the right and the opportunity to effect the

5. The policy was a "group" policy issued in connection with J.B.'s employment.

changes essential to make Antoinette, or anyone he chose, the recipient at his death. There is no question regarding his mental capacity or his physical strength, and no evidence that he was prevented from exercising his rights by any excusatory circumstance. Aware that Mary was beneficiary ..., he did not even undertake to make a change. As a result of his inaction, or choice, Mary remains the named beneficiary .... Why he failed to make the change this record does not enable us to say. It is not beyond credulity that he actually *chose* to make no change. Mary was the mother of his three children. She was rearing two of them without any aid from him.... [T]his record affords no basis for holding that Mary, named ... beneficiary, is not entitled to the ... proceeds of the policy." *Id.*

Obviously, *John Hancock* does not govern the instant case, as there was no change of beneficiary in that case and no indication that the insured ever lacked mental capacity to execute a change of beneficiary.

■ Despite those differences, when we read *John Hancock* in the context of Norma's argument, we gather that the theory of her second point is: (a) during 1993 until his death on November 22, J.B. was mentally competent to execute a change of beneficiary, (b) during that period he was aware he had previously executed Exhibit 3 designating Norma as beneficiary, (c) he never executed a change of beneficiary superseding Exhibit 3, and (d) his inaction transformed Exhibit 3 from a nullity into a valid change of beneficiary.

Nothing in *John Hancock* supports the hypothesis that when someone performs an act that is a nullity because of his mental incompetency, but thereafter, upon regaining competency and becoming aware of the act, does nothing to alter the effect it would have had if it had been valid, his inaction transforms the act from a nullity into a valid act. While there may be a case where a court so held (perhaps on the theory of ratification instead of "waiver"), neither *John Hancock* nor the final case cited in the argument (identified below) so holds.[6]

The final case cited is *Postal Life and Casualty Insurance Co. v. Tillman,* 287 S.W.2d 121 (Mo.App.1956), another dispute between an insured's ex-wife and his widow about life insurance proceeds. We need not lengthen this opinion by synopsizing the intricate facts of that case (which include a bankruptcy and an assignment of the policy to the insured's lawyers in addition to the dispute between the women). What we said regarding *John Hancock* applies with equal force to *Postal Life.*

It is Norma's burden, as appealing party, to demonstrate error. *State ex inf. Ashcroft, ex rel. Plaza Properties, Inc. v. City of Kansas City,* 687 S.W.2d 875, 876[2] (Mo. banc 1985). If we have correctly divined the theory of her second point from the argument, no case she cites in support of the point demonstrates the trial court erred in the respect alleged therein.

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.

■

**6.** We searched for a Missouri case supporting such a hypothesis, but found none.